[Civ. No. 4423. First Appellate District, Division Two.—December 28, 1922.]

## ALEXANDER R. ABRAMS, Petitioner, v. EDWIN M. DAUGHERTY, as Commissioner, etc., Respondent.

[1] CORPORATE SECURITIES ACT—REVOCATION OF BROKER'S CERTIFICATE—NOTICE AND HEARING—RIGHT OF BROKER.—In view of the rule that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard, even in the absence of any provision therefor in the Corporate Securities Act (Stats. 1917, p. 673), a broker is entitled to a notice and hearing before the commissioner can revoke his certificate.

[2] ID.—INSUFFICIENT ORDER TO SHOW CAUSE—LACK OF JURISDICTION TO REVOKE CERTIFICATE.—The commissioner of corporations is without jurisdiction to either suspend or revoke the certificate of a broker under the Corporate Securities Act of 1917, where the notice mailed to the broker was merely an order to show cause why his certificate should not be revoked and contained no charges of any nature and nothing from which he could ascertain what he would be required to defend, since the constitutional guarantee of due process of law requires that he be allowed to appear and defend, and the established rules of procedure demand that the accused shall be given such notice of the charge against him as will enable him to formulate a defense.

[3] ID.—SUSPENSION OF CERTIFICATE—FRAUD—INSUFFICIENCY OF EVIDENCE.—In this proceeding to review the action of the commissioner of corporations in suspending the certificate of a broker, the evidence fails to support the finding that the broker had engaged or was about to engage in a fraudulent transaction.

[4] ID. — PRESUMPTION AGAINST FRAUD — APPLICABILITY OF RULE TO REVOCATION OF CERTIFICATE.—The presumption against fraud is available to a broker charged therewith in a proceeding to revoke

his certificate, and can be overcome only by clear and satisfactory proof.

[5] ID.—SUSPENSION OF CERTIFICATE—POWER OF COMMISSIONER.—If it may be assumed that the power of the commissioner of corporations under the Corporate Securities Act to suspend a broker's certificate is to be implied from the grant of the power of revocation, it nevertheless may be exercised only when the commissioner has obtained jurisdiction to proceed with a hearing and determination of that question.

PROCEEDING in Certiorari to review an order of the Commissioner of Corporations suspending the certificate of a broker. Order annulled.

The facts are stated in the opinion of the court.

Roy A. Bronson for Petitioner.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

NOURSE, J.—This is a proceeding in *certiorari* to review the action of the respondent as commissioner of corporations of the state of California in temporarily suspending the certificate authorizing petitioner to act as a broker under the provisions of the Corporate Securities Act of 1917. (Stats. 1917, p. 673.) The respondent has filed a return, which, in addition to a large amount of extraneous and immaterial matter, contains a copy of a notice to the petitioner to show cause why his certificate should not be revoked, a transcript of certain evidence taken before the commissioner in response to said notice, and a copy of the order of suspension. The notice of hearing was mailed to the petitioner herein and was in the words and figures following: "You are hereby notified to appear at this office at 2:30 P. M., on Friday, September 29, 1922, to show cause why your broker's certificate should not be revoked." At the time set an attorney appeared for the petitioner and at his request the hearing was continued until the folowing day. At that time, the attorney again being present, testimony was taken by the deputy commissioner of a witness who claimed that he had purchased stock of the Coast Tire & Rubber Co. upon representations made by selling agents of the petitioner herein that said stock would soon increase

in value and that a dividend thereon would soon be paid. This witness further testified that he had been for some time prior thereto a stockholder in the Coast Tire & Rubber Co., had received several reports of the financial condition from the officers of the company, had visited its plant, and that he did not believe everything that the salesman had stated to him, but doubted their representations that the stock would increase in value and that a dividend would soon be paid. He also testified that the agents represented to him that if he became dissatisfied with his purchase the petitioner herein would sell his stock at market and that he had requested the petitioner to do so, but had been unable to obtain from the petitioner any satisfactory reply as to whether such sale would be made. Upon this evidence the commissioner executed the order temporarily suspending the petitioner's certificate to act as a broker. This order was made on October 3, 1922, and, it is alleged, is still outstanding.

Respondent concedes that the only grounds upon which he may revoke a license or certificate issued under the act are those contained in section 6 of the act. That is to say, before the commissioner could justify a revocation of the license it was necessary *that he should find* that the petitioner: (a) was of bad business repute; (b) had violated some provision of the act; or (c) had engaged or was about to engage in a fraudulent transaction. It is also conceded that this court may examine the evidence taken by the commissioner in order to ascertain whether the commissioner exceeded his authority in making the order.

The commissioner did not make any finding of any nature, but from an examination of the evidence it is apparent that his action was based upon the ground designated ''c'' above, because no competent evidence was produced to support either grounds ''a'' or ''b.'' An attempt was made to have the witness testify as to the business reputation of the petitioner, but the witness disqualified himself from giving such testimony. Treating the case then as one in which the broker was charged as having engaged in or being about to engage in a fraudulent transaction, it is necessary to consider whether the petitioner was accorded the due process of law to which he was entitled before an order of revocation could be made.

The statute is silent upon the matter of the procedure to be followed in cases of this kind except that it does require the commissioner to find the broker guilty of one of the three designated causes. In *Bannerman* v. *Boyle,* 160 Cal. 197, 205 [116 Pac. 732], the supreme court, in considering the provisions of the San Francisco charter authorizing the mayor to remove certain officers "for cause," held that, in the absence of clear statutory authority, such power of removal could not be exercised until "notice has been given to the officer of the charges made against him and he has been given an opportunity to be heard in his defense." The charter did not fix any mode of procedure and did not specify any grounds for removal. It merely authorized the mayor to remove "for cause" and the court held (p. 206) that "the words 'for cause,' without more, imply good cause, the existence of some fact which would constitute a reasonable cause for the removal." To the same effect is *Welch* v. *Ware,* 161 Cal. 641 [119 Pac. 1089], where the court had under consideration the provisions of section 4149b of the Political Code, which authorized the removal of a fish and game warden "for intemperance, neglect of duty, or other good and sufficient reasons." It was argued that the language "good and sufficient reasons" authorized the board of supervisors to remove the warden summarily and without charges filed or a hearing thereon; but the court held that the case was controlled by *Bannerman* v. *Boyle, supra,* and that there was no essential difference between the code section and the provisions of the charter authorizing a removal "for cause." It was said that "under such provision of the code the respondent could only be legally removed after an opportunity to be heard on charges preferred against him."

In these cases, as in the statute under consideration, there was no provision for a notice and hearing before the action was taken. In this respect the statute differs from the Medical Practice Act (Stats. 1913, p. 722, sec. 14, amended 1921, p. 1009), the Real Estate Brokers' Act (Stats. 1919, p. 1252, sec. 12), and similar acts which specifically require the filing of formal charges and a hearing thereon before a license can be revoked. But the silence of the statute in this respect is of no importance if the right to act as a broker is a property right of which the holder may not be deprived without due process of law.

In *Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590 592 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39], the supreme court say: "The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the constitution and laws of the state, one is entitled to be protected and secured." In *Suckow* v. *Alderson*, 182 Cal. 247, 249 [187 Pac. 965, 966], in referring to this principle, the court say: "The fourteenth amendment to the constitution of the United States provides that no person shall be deprived of life, liberty, or property, without due process of law. Article I, section 1, of the constitution of California, provides that all men have certain inalienable rights, among them being those of enjoying liberty and possessing and protecting property, and section 13 thereof provides that no person shall be deprived of life, liberty, or property, without due process of law. The deprivation of such right without due process of law would be a violation of these provisions. The meaning of this is that no one can be deprived thereof without notice and an opportunity for a hearing before some tribunal authorized to determine the question." To the same effect is *Brecheen* v. *Riley*, 187 Cal. 121, 124 [200 Pac. 1042, 1044], where the court, having the Real Estate Brokers' Act under consideration, say: "It is firmly established that it is the right of every person to pursue any lawful business or vocation he may select, subject to such legal restrictions and regulations as the proper governmental authority may impose for the protection and safety of society, and that such right is valuable and must be protected and secured, and cannot be taken from those who possess it, without 'due process of law.'" In *Schomig* v. *Keiser*, 189 Cal. 596 [209 Pac. 550, 551], while considering the same act, the court say: "The portion of the act which authorizes the real estate commissioner to forfeit the license of a broker or salesman and take it away from him is highly penal in its nature, and should not be construed to include anything which is not embraced within its terms." In *Hovey* v. *Elliott*, 167 U. S. 409, 418 [42 L. Ed. 215, 17 Sup. Ct. Rep. 841, see, also, Rose's U. S. Notes], it is said: "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, *until he has been*

*duly cited to appear, and has been afforded an opportunity
to be heard.* Judgment without such citation and opportunity wants all the attributes of a judicial determination;
it is judicial usurpation and oppression, and can never be
upheld where justice is justly administered." (Italics ours.)

[1] Applying the rule to this case it would follow that,
even in the absence of any provision in the statute, a broker
is entitled to a notice and hearing before the commissioner
can revoke his certificate. Such a hearing is plainly contemplated by the act which authorizes revocation only in the
event that the commissioner "shall find" that the broker is
guilty of one of the three grounds of revocation specified.
A "finding" of the existence of certain facts presupposes
some hearing of evidence tending to prove such facts.
"The judicial function is to decide on the property or rights
of a citizen (*Robinson* v. *Board of Supervisors,* 16 Cal. 210;
*Imperial W. Co.* v. *Board of Supervisors,* 162 Cal. 18 [120
Pac. 780]; 11 Cor. Jur. 122); to declare the law and define the rights of the parties under it (*Frasher* v. *Rader,*
124 Cal. 134 [56 Pac. 797]); to determine what shall be adjudged or decreed between the parties (*Rhode Island* v.
*Massachusetts,* 37 U. S. 718 [9 L. Ed. 1233, see, also, Rose's
U. S. Notes]); to decide with whom is the right of the case
(*People* v. *Board of Supervisors,* 122 Cal. 421 [55 Pac.
131]); to ascertain existing rights or establish a title or to
determine the rights of the controversy between the parties
(*Title etc. Co.* v. *Kerrigan,* 150 Cal. 320 [119 Am. St. Rep.
199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]). The determination that plaintiff was guilty and that his right to practice
should be suspended comes clearly within the scope of these
definitions." (*Suckow* v. *Alderson,* 182 Cal. 247, 250 [187
Pac. 965, 966].)

The very basis of a judicial or *quasi*-judicial hearing at
which property rights are determined presupposes some sort
of process by which the interested party is put upon his notice as to the time, place, and nature of the hearing. Where
the statute requires the filing of charges and notice of the
hearing thereon, it has been uniformly held that the one
accused must be given such notice of the nature of the
charge against him as will enable him to formulate a defense. (*Dyment* v. *Board of Medical Examiners,* 57 Cal.
App. 260 [207 Pac. 409, 411], and cases there cited.) That

case involved a construction of section 14 of the Medical Practice Act as amended in 1917. (Stats. 1917, p. 109.) The section provides in part: ''Whenever any holder of a certificate herein provided for is guilty of unprofessional conduct, as the same is defined in this act, . . . or whenever a certificate has been procured by fraud or misrepresentation . . . it shall be the duty of said board . . . to revoke his certificate.'' The same section provides that no certificate shall be revoked unless the holder has been cited to appear and answer to a sworn complaint. In the Dyment case a complaint was filed charging that the physician had procured his certificate through fraud and misrepresentation. It was this complaint which the district court of appeal held to be insufficient to give the board jurisdiction of the hearing. In denying a petition to transfer the case to the supreme court, the latter court approved this ruling of the district court of appeal and held further that, even though the insufficiency of the complaint was not attacked prior to the hearing before the board, the proceedings should be set aside in *certiorari* upon the ground that the board did not have jurisdiction to make the order. The language of the supreme court on the question of the insufficiency of the complaint is particularly applicable to the present case: ''It contains no specific allegations of fact, but merely states that he 'procured by fraud and misrepresentation a certificate to practice medicine.' Such method of charging fraud has always been held insufficient; the specific facts must be stated. (9 Ency. of Pl. & Pr. 686; 31 Cyc. 55.)'' (57 Cal. App. 260, 266 [207 Pac. 409, 412].)

[2] Applying the rule to the present case, it follows that, even though an attorney appeared for petitioner at the time noticed, the commissioner would not have jurisdiction to make the order if the complaint or notice did not state facts showing that the petitioner had committed some breach within the purview of the act. This is so not because the statute requires the filing of charges against the broker but because the constitutional guaranty of due process of law requires that he be allowed to appear and defend, and the established rules of procedure demand that the accused shall be given ''such notice of the nature of the charge against him as will enable him to formulate a defense.'' (*Dyment* v. *Board of Medical Examiners,* 57 Cal.

App. 260 [207 Pac. 409, 411].) The rule is particularly applicable here for two reasons: (1) The proceeding is "highly penal in its nature" (*Schomig* v. *Keiser,* 189 Cal. 596 [209 Pac. 550]), and (2) the only conceivable ground of revocation was based upon fraud and misrepresentation, and the accused should have been notified of the facts constituting the fraud or misrepresentation. (*Dyment* v. *Board of Medical Examiners,* 57 Cal. App. 260, 266 [207 Pac. 409, 412].)

The notice mailed to the petitioner was merely an order to show cause why his certificate should not be revoked. It contained no charges of any nature and nothing from which he could ascertain what he would be required to defend. It was, therefore, insufficient to give the commissioner any jurisdiction to either suspend or revoke the certificate.

[3] In addition to this, assuming, as we must, that the commissioner's action was based upon the ground that petitioner "has engaged, or is about to engage in any fraudulent transaction," a review of the evidence fails to support the finding. The only evidence which the commissioner could consider was that taken at the hearing in the presence of petitioner's counsel. This consisted of the testimony of one witness to the effect that he had purchased certain shares of corporate stock through petitioner's agents and upon their representations that the stock would increase in value, would soon pay a dividend and that petitioner would sell the stock at market on demand of the witness. There was no evidence that these representations were false or that the witness relied upon them. There was no evidence that the petitioner knew that the representations were made or that, if made, they were false. There was no evidence that the agents who made the representations knew, or had reason to know, that they were false or fraudulent. There was no evidence that the petitioner had engaged in or that he was about to engage in a fraudulent transaction. [4] "The presumption is always against fraud. This presumption approximates in strength that of innocence of crime. (*Truett* v. *Onderdonk,* 120 Cal. 581, 588 [53 Pac. 26].) One who seeks relief from fraud must allege it and prove it by clear and satisfactory evidence. A mere suspicion of fraud is not sufficient." (*Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332, 338 [187 Pac.

996, 998].)   This presumption was available to the peti-
tioner in this proceeding and could be overcome only by
clear and satisfactory proof.   If we may assume that the
commissioner found fraud the evidence was insufficient to
support the finding.   If the finding was based upon either
of the other grounds specified in the statute, there was no
evidence at all to support the finding.

[5]   The petitioner argues with considerable force that
the commissioner had no power to suspend his certificate
because such power is not expressly conferred by the stat-
ute.   The commissioner contends that the power to suspend
is incidental to the power to revoke and is to be implied
from the grant of the power of revocation; and that the
power of suspension should be exercised pending a hearing
of the charges and a determination of the question whether
the certificate should be revoked.   Similar statutes exam-
ined expressly confer such power.   If we may assume that
it is to be implied from the grant of the power of revoca-
tion, it nevertheless may be exercised only when the com-
missioner has obtained jurisdiction to proceed with a hear-
ing and determination of that question.   If this were not
so the commissioner could, as has been done in this case,
order a temporary suspension and continue the order in-
definitely, thus depriving the broker of his right to do
business without any legal process whatever.

Other points raised do not require consideration.

The order is annulled.

Sturtevant, J., and Langdon, P. J., concurred.